# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

CHRIS G. WARD                                                    PLAINTIFF

v.                          NO. 4:17-CV-245-BSM-BD

COMMISSIONER,
Social Security Administration                                   DEFENDANT

## RECOMMENDED DISPOSITION

**I.  Instructions**

The following Recommended Disposition ("Recommendation") has been sent to Chief Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. Objections must set out the factual or legal basis for the objection. To be considered all objections must be received by the Clerk of Court within 14 days of this Recommendation. By not objecting, parties may waive the right to appeal questions of fact.

**II. Background**

Chris Ward applied for social security disability benefits alleging an onset date of March 1, 2012. (R. at 101). After a hearing, the administrative law judge (ALJ) issued a decision denying Mr. Ward's application. (R. at 33). The Appeals Council then denied his request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision. Mr. Ward filed this lawsuit requesting judicial review.

### III. The Commissioner's Decision

The ALJ found that Mr. Ward had the following severe impairments: anxiety, depression, post-traumatic stress disorder, intermittent explosive anger disorder, hypertension, Raynaud's disease, and degenerative disk disease of the cervical and lumbar regions. (R. at 21). After considering all of Mr. Ward's impairments, the ALJ determined that Mr. Ward had the residual functional capacity (RFC) to perform light work, except that he could only lift and carry twenty pounds frequently and ten pounds occasionally; could sit for a total of six hours in an eight-hour workday; could stand or walk a total of six hours in an eight-hour workday; could only occasionally stoop, crouch, bend, kneel, crawl, and balance; could never use ropes, ladders, or scaffolding; and work would be limited to simple, routine, and repetitive task where supervision is simple, direct, and concrete. He could maintain frequent contact with coworkers and supervisors but only occasional contact with the general public. (R. at 23). The RFC the ALJ determined would not allow Mr. Ward to return to any past relevant work. (R. at 31).

The ALJ heard testimony from a vocational expert (VE), who testified that a person of Mr. Ward's age, education, work experience, and RFC could perform jobs such as price tagger and office helper (R. 32). The ALJ found, therefore, that Mr. Ward was not disabled for purposes of the Social Security Act. (R. at 32–33).

### IV. Discussion

Mr. Ward argues that the mental RFC is not supported by substantial evidence; that the physical RFC is not supported by substantial evidence; and that the ALJ failed to meet the step-five burden of demonstrating that jobs were available. Because the mental

RFC is not supported by substantial evidence on the record as a whole, it is not necessary to reach Mr. Ward's other points.

The Court is tasked with determining whether substantial evidence supports the Commissioner's findings. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In reviewing the Commissioner's decision, the Court must consider all evidence in the record, both evidence supporting the Commissioner's decision and also evidence that detracts from the decision. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court cannot reverse the Commissioner's decision, however, merely because sufficient evidence also supports a contrary outcome.

The ALJ gave "some weight" to the opinion of consultative examiner Samuel Hester, Ph.D., P.A., but discounted Dr. Hester's opinion because he "appears to rely heavily on the claimant's subjective reports." (R. at 30). Dr. Hester determined that Mr. Ward had a limited capacity to communicate and interact in a socially adequate manner. Even though Mr. Ward could cope with the mental demands of basic work, Dr. Hester opined that, after a brief period, Mr. Ward would likely have an explosive episode and be terminated. Dr. Hester further opined that Mr. Ward might not be able to complete work tasks within an acceptable timeframe due to pain. (R. at 352).

Because Dr. Hester is a psychologist rather than a psychiatrist, his evaluation necessarily relied on Mr. Ward's statements. Even so, Dr. Hester stated that he had considered signs of symptom exaggeration and malingering in making his determination

of Mr. Ward's mental state. (R. at 353). Nothing in the record calls into question Dr. Hester's professional judgment in evaluating Mr. Ward. The ALJ did not provide sufficient reasons for discrediting Dr. Hester's opinion.

Additionally, the ALJ summarily rejected the opinion of Kim Johnson, L.P.C., Mr. Ward's counselor, because "despite her lengthy treatment history with the claimant, she is not an acceptable medical source for Social Security purposes." (R. at 30). In rejecting Ms. Johnson's opinions, the ALJ cited SSR 06-03p. The ALJ's interpretation of that ruling, however, was too narrow.

SSR 06-03p requires an ALJ to give consideration to "other sources" rather than dismissing those opinions in such a cursory manner. In fact, the ruling provides that the opinions of non-acceptable medical sources at times may outweigh the opinions of acceptable medical sources, including treating sources.

Ms. Johnson had worked with Mr. Ward since September 9, 2013. (R. at 505). During that time, he had not received psychological or psychiatric treatment from an "acceptable medical source," so Ms. Johnson's insight into his mental health treatment was entitled to some consideration. The ALJ erred in failing to give proper consideration to her opinion.

Finally, the ALJ dismissed Mr. Ward's history of Global Assessment of Functioning (GAF) scores because those scores have no direct correlation to the severity requirements of the mental disorder listings. The ALJ correctly observed that a GAF score presents a snapshot, that is, a "picture in time," and may be based on some factors that are not relevant to a Social Security claim. But this does not mean that GAF scores

have no relevance in the social security context. (R. at 28). The record here is not limited to one or two GAF scores, but rather, includes multiple scores over a two-year period. Almost all of Mr. Ward's GAF scores fall below 50, scores that reflect serious symptoms or impairments in social, occupational, or school functioning. (R. at 333, 334, 335, 338, 414, 428, 437, 447, 450, 465, 476, 487; *Diagnostic and Statistical Manual of Mental Disorders*, 32 (Am. Psychiatric Ass'n ed., 4th ed. 1994)). A pattern of GAF scores indicating a pattern of serious symptoms are relevant and should not be ignored. *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009).

The ALJ did not properly consider the opinions and evidence relevant to Mr. Ward's mental impairments. For that reason, the Commissioner's decision should be reversed and the matter remanded to the Commissioner for further consideration.

## V. Conclusion

The Court recommends that Judge Miller REVERSE and REMAND the Commissioner's decision in this case with instructions to develop the record as necessary and to appropriately consider all evidence concerning Mr. Ward's mental impairments.

DATED this 19th day of March, 2018.

_____
UNITED STATES MAGISTRATE JUDGE